# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SOUTHERN RAILWAY COMPANY v. CLARKE.

### January 31, 1907.

1. RAILROADS—*Grade Crossing—Negligent Construction—Demurrer to Evidence.*—In an action to recover damages for an injury inflicted at a grade crossing of a railway in consequence of alleged negligence in the construction and maintenance of the crossing, if the evidence is such that reasonable men might fairly differ as to whether the method of constructing and maintaining the crossing was a proper and safe one, it is a question for the jury, and upon demurrer to the evidence must be decided against the demurrant.

2. DAMAGES—*Excessive Verdict.*—In an action for damages for a personal injury if the amount found by the jury is not so great as to clearly indicate that the jury was actuated by partiality or prejudice the verdict will not be set aside as excessive.

Error to a judgment of the Corporation Court of the city of Danville. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Harrison & Leigh,* for the plaintiff in error.

*Julian Meade,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the Court.

This action was brought by the plaintiff, the defendant in error here, to recover damages for injuries caused him and his horse whilst riding across the defendant's railroad track where it crosses Main street in the city of Danville.

In crossing the track one of the horse's forefeet was caught under a bolt in one of the rails of the track in an open space between the rail and the plank next to and parallel with it, which caused the horse to fall, throwing the plaintiff over his head and inflicting the injuries complained of.

The ground of negligence alleged in the declaration was the failure on the part of the defendant to construct and maintain the crossing in such a manner as to be reasonably safe and convenient to persons traveling over it.

After the evidence had been introduced by both parties the defendant demurred to it. The demurrer was overruled by the court. The defendant moved the court to set aside the verdict because the damages assessed by the jury (subject to the demurrer to the evidence), $826.25, were excessive. That motion was overruled, and judgment rendered against the defendant for the sum found by the jury. To that judgment this writ of error was awarded.

The evidence of the plaintiff tended to prove that the space between the plank and the "T" iron rail, under which the horse's foot was caught, was from three and one-half to four inches wide, and extended down to the ties upon which the iron rail and the plank rested, a distance of five or six inches. The plaintiff's evidence further tended to prove that this space, which was left for the passage of the flanges of the car wheels, was wider and deeper than was necessary for the purpose; that such flanges are from one and a fourth to one and a half inches wide, and not over two inches deep, and would not reach down to the bolt of the fish-plate; that on the morning of, or the day before, the plaintiff's injury, a member of the city police force saw the condition of the crossing and that it was dangerous, and notified the chief of police, who was there, of its condition, and they both spoke to the gatekeeper at the crossing, as did another witness, about its dangerous condition; that Main street is one of the most frequented streets of the city, and upon which there is constant travel; that as the plaintiff rode over the crossing

his horse, going at a pace or fox-trot at the rate of eight or ten miles an hour, stepped or slipped into the space between the rail and the plank with one of his forefeet, and the toe of the shoe on that foot caught under the end of the bolt which held the fish-plate in position, causing the horse to fall and throw the plaintiff over his head into the street, bruising his forehead, cutting a gash under his chin, hurting his shoulders, so that he had been unable to do much work up to the time of the trial— some two or three months afterwards—and damaging the horse to the extent of about $100.

The defendant introduced the section foreman, who stated that it was his duty to repair and keep the crossing in order; that about a month before the accident he had repaired it, and put it in standard condition; that the timbers were sound, having been renewed about eighteen months before; that the distance between the rail and the plank is two and one-half inches, which is as close as they can be placed without the flange of the wheel pulling up the plank; that when the space between the iron rail and the plank gets full of cinders the flanges of the cars will go down into them and the pressure will push the timber away; that it had rained the night and morning before the accident, and that in wet weather water from the street car track running down and standing on the rail causes the cinders to jostle or "slosh" out of the space between the rail and the plank when the cars pass over the track; that the condition of the crossing was the same that it had been since the street cars ran through to North Danville (how long that was he does not state) ; and that if there ever had been an accident there he had never heard of it. The defendant introduced another witness, who stated that he had charge of the defendant's gates at the crossing; that the evening before the accident the crossing was in good condition; that a pretty heavy rain had fallen that night; that when he returned the next morning the cinders at the crossing had been washed or jolted out of the space between the rail and plank, and there was danger of a horse getting its

foot hung; that about 12:30 P. M. of that day he sent a message to the section foreman whose business it was to keep the crossing in order to come down and see about it (but this message seems not to have been delivered); that the more rain there is the more the cinders are washed or "sloshed" out by the trains; that after the injury the space was packed tight with cinders.

Considering this evidence as on a demurrer to it the court cannot say as a matter of law that the defendant company was not guilty of negligence in constructing and maintaining the crossing; and if it was guilty of negligence, of course the injury could not, as the defendant argues, be the result of an accident within the legal meaning of that word, so as to relieve the defendant from liability.

Conceding for the purposes of this case, as the defendant insists, that notice to the gate-keeper was not notice to the defendant company, and that after the cinders were washed out the defendant did not have a reasonable time to ascertain that fact and remedy the defect before the injury occurred, it does not follow that the defendant was not guilty of negligence. *Payne v. Railroad Co.,* 83 N. Y. 572. Upon the whole evidence, and especially upon the plaintiff's evidence, the court could not say that the defendant had performed its duty in constructing and maintaining the crossing when the space left between the rail and plank was wider and deeper than was necessary for the purpose for which the space was left, and which defect in construction, if it was a defect, the defendant sought to remedy by filling with cinders, a substance which according to the defendant's own showing was likely to be frequently washed or "sloshed" out. Whether this method of constructing and maintaining was a proper and safe one, although no accident had ever happened there before, was a question about which reasonable men might fairly differ; and when that is the case the settled rule is that the question of negligence is one for the

---

Opinion.

---

jury.  *Fisher's Admr.* v. *C. & O. Ry. Co.,* 104 Va. 635, 642-643, 52 S. E. 373, 2 L. R. A. (N. S.) 953, and cases cited.

On the question of the refusal of the trial court to set aside the verdict of the jury because the damages were excessive it is only necessary to say that while the damages do seem to be pretty heavy for the injuries done the plaintiff, they are not so great as to clearly indicate that the jury was actuated by partiality or prejudice.  Unless this appears the well settled rule is that the verdict in this class of cases will not be set aside on the ground that the damages are excessive.  *Richmond Ry. Co.* v. *Garthright,* 92 Va. 635, 24 S. E. 267, 32 L. R. A. 220, 53 Am. St. Rep. 839; *Norfolk* v. *Johnakin,* 94 Va. 285, 26 S. E. 830.

We are of opinion that the judgment complained of should be affirmed.

*Affirmed.*