**Wylodean Riley McCORMACK, Ruth Riley Shearon, Iva Riley Fibel Korn, and Addie Sue Riley, Plaintiffs-Appellants,**

**v.**

**James Elvis RILEY, Danny Riley, Jeanette Riley Adams, Elizabeth Sue Riley Raymer, and Paul E. Riley, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

Oct. 27, 1978.

Certiorari Denied by Supreme Court Feb. 12, 1979.

William B. Cain, Cain & Moore, Columbia, for plaintiffs-appellants.

William Keaton, Keaton, Turner & Peluso, Hohenwald, Ray Hollis, Waynesboro, for defendants-appellees.

## OPINION

DROWOTA, Judge.

This is an appeal from a directed verdict upholding the will of Elvis C. Riley. At issue on appeal is the propriety of the directed verdict and of the order at trial excluding all evidence of unsoundness of mind except for the two year periods immediately preceding and following the time of execution of the will. We reverse on the evidentiary question and remand for a new trial.

The will in question was admitted to probate in common form. Appellants, the four daughters of the testator, initiated this action against the testator's sons and the grandchildren of a deceased son, contesting the will on grounds of unsoundness of mind and undue influence. There is no dispute the will was executed May 31, 1952, in compliance with the statutorily prescribed formalities. The record discloses that thirty days after his wife died of cancer the decedent, his eldest son James Riley, defendant here and executor under the contested will, and a cousin went to the office of an attorney where the will in issue was drawn and executed. Thereafter the will was kept in a bank safety deposit box under the name of the decedent and later transferred to a deposit box under the name of the defendant James Riley where it remained until offered for probate.

After discussion in chambers with counsel the trial court limited evidence of unsoundness of mind to the two year period immediately before execution of the will and the two year period immediately after execution. The most damaging effect to plain-

tiffs of this limitation was to exclude any evidence of the decedent's mental problems from 1932 until 1950, including hospital records made in 1945 while the decedent was being treated at the Veterans' Administration Hospital in Murfreesboro for psychosis and cerebral arteriosclerosis. Plaintiffs argue, and we consider it significant, that the evidentiary restriction "effectively cut the heart out of the plaintiffs' case." While plaintiffs also urge that the trial court committed error by sustaining defendants' motion for directed verdict, we do not reach that assignment of error because we agree with plaintiffs that the evidence which they could introduce was improperly circumscribed.

■ The law bearing on testamentary capacity in Tennessee is settled and generally not disputed by the parties. In *Melody v. Hamblin*, 21 Tenn.App. 687, 115 S.W.2d 237 (1937), it is stated:

[T]he testator must be of sound and disposing mind and memory, which is such mind and memory as enables him to know and understand the business in which he is engaged at the time of making his will, i. e., to recollect the property which he is about to dispose of, the manner of distributing it, and the objects of his bounty, and to comprehend and appreciate the claims to which he ought to give effect.

*Id.* at 694, 115 S.W.2d at 242. To prove the requisite mental condition at the time of execution, "evidence of the testator's mental condition and physical condition before and after making the will, *within reasonable limits*, is received." [Emphasis added.] *Id.* at 695, 115 S.W.2d at 242. The reasonableness of those limits is within the discretion of the trial court and varies, of course, with the facts of each case. "Evidence of prior mental condition may have much, little or no probative value depending upon the nature and effect of the malady, whether general, habitual, continuous, chronic or progressive or due merely to temporary, superficial, accidental, occasional or intermittent causes of conditions." *American Trust & Banking Co. v. Williams*, 32 Tenn. App. 592, 603, 225 S.W.2d 79, 84 (1948).

This appeal raises the question of the reasonableness of the limits placed on the admissibility of plaintiffs' evidence, in essence a question of relevance. The trial judge concluded that the proffered evidence of a history of mental problems and treatment was too remote in time and was of no probative value.

■ We are unable to agree that the excluded evidence was of no probative value. The mental condition of the testator at the time of execution is a material issue, which may be proved indirectly by evidence of the testator's mental condition prior to and subsequent to the time of execution. *Melody, supra; American Trust, supra.* Clearly, the excluded evidence before us is such circumstantial evidence and is therefore of some probative value. We are not persuaded in this regard by defendants' argument that the excluded evidence is logically irrelevant because the examining physicians had concluded and noted on the hospital records that the decedent was competent. It is beyond question that the physician's conclusion is not binding on this Court on the question of testamentary capacity.

■ Having decided the excluded evidence has some probative value we now must address the conceptually distinct question whether the excluded evidence has sufficient probative value to warrant its admission despite the costs attending such admission. It is to this latter consideration that we understand the trial judge to have referred when he excluded the evidence because of remoteness in time. Not all logically relevant evidence is admissible. Thus evidence which would advance the inquiry but would also inflame or unduly distract the jury or require an undeserved expenditure of judicial time or unfairly surprise the opponent may not be admissible. See McCormick on Evidence § 185 (2d ed. 1972). The probative weight of evidence must be balanced against these attendant costs in determining whether that evidence should be admitted.

One possible cost which we can identify as attending admission of the proffered evidence in the present case would be the added expenditure of judicial time. This cost we assess as slight, however, because the hospital records are not lengthy (consisting of 14 documents) and were properly qualified under the Uniform Business Records as Evidence Act.

The most important "costs" are the dangers of unduly arousing the emotions of prejudice, hostility or sympathy and unduly distracting the jury from the main issue. McCormick on Evidence 2nd Ed. § 185, p. 439. In the present case, there is a minimum of the dangers just mentioned; and this can be readily eliminated by a proper instruction from the Court as to the assignment of weight to the evidence.

■ Balanced against the costs mentioned above is the probative weight of evidence which suggests evolving and substantial mental afflictions. The probative weight is enhanced by the permanent nature of the illness, arteriosclerosis, which underlay the mental afflictions. See, *American Trust, supra.*

■ We do not suggest that the excluded evidence would necessarily establish a lack of testamentary capacity at the time of the execution of the will or would establish unsoundness of mind prior to the execution such that the presumption of capacity would be defeated and the burden shifted to the proponents of the will to prove capacity. We hold only that the excluded evidence was relevant and sufficiently probative to be admissible for the consideration of the jury.

We conclude therefore that the proffered evidence was improperly excluded and we reverse and remand for proceedings not inconsistent with this opinion.

Reversed and remanded.

SHRIVER, P. J., and TODD, J., concur.